May it please the Court. My name is Brittany Edwards and I'm an Assistant Attorney General for the State of Arkansas. I'm here today on behalf of the appellants. I reserve four minutes for rebuttal. We are here today because the District Court abused its discretion in granting Ms. Jones a preliminary injunction, an extraordinary and drastic remedy under the law, and joining the State of Arkansas from enforcing a constitutional statute which limits campaign contributions to a period of two years before a primary election. Can I ask you just an argument? Because you just mentioned the injunction. I just want to know the scope of the State's argument here. And that is, are you challenging only the likelihood of success on the merits as pertains to the injunction? Now there's some other arguments about the underlying constitutionality, etc. But is that the only thing being challenged in this case? Your Honor, yes. We challenge harm in the injunction below. But in First Amendment context, harm is the data-based factors. They admit harm. So likelihood of success of merits is the only issue on the preliminary injunction. Thank you. That helps. You're very welcome. The State of Arkansas contends that this Court should vacate the preliminary injunction and remand this case with instructions to dismiss for two reasons. First, the District Court abused its discretion in finding that Ms. Jones had standing to bring this claim because she has not identified a candidate under Arkansas law whom she wishes to contribute to. Second, the District Court abused its discretion in finding that Ms. Jones was likely to succeed on the merits of her claim because the State of Arkansas has a compelling interest in preventing the corruption of its political processes and the appearance of corruption. And this statute is narrowly tailored to further that interest. I'm guessing you're going to start with standing? Yes. And so I'd like to jump in sort of where you have ended. In your reply brief, you add in some argument about you sort of shift from Jones to what's the definition of a candidate. And that sort of gave me pause. I have the statute on how they describe a candidate, but it doesn't really narrow it much. It says someone who makes an announcement to become a candidate or solicits funds, it doesn't say receive funds, it says solicit funds. How does Arkansas determine when someone becomes a candidate? Yes, Your Honor. There is no case law directly on point in interpreting affirmative steps as it regards to candidate in this statute. However, in multiple other areas of law, the State of Arkansas has interpreted affirmative steps to require an action, something that would further the issue. For example, there's a case, Turner v. State, where the issue was whether the individual defendant had taken affirmative steps to evade arrest. And the court there looked at the facts that he had made sure his victim was home alone, he had tied his victim up when he left and went to the store, and when the police came to the door, he threatened the victim and told them to lie. So we believe, there's no evidence in the record, that Mr. Johnson, the only person that Ms. Jones has identified at any point in this proceeding, is a candidate under Arkansas law. So he could just, I think Judge, the district court said, oh, if he just stands on a mountaintop and says I'm running for governor or I'm running for the Senate, I think this particular fellow is already in office and the assertion was that he is going to run again. Is that enough? Your Honor, the State of Arkansas would probably take a public announcement for candidacy as an affirmative step. But here, there is no public announcement. The only thing in the record about Mr. Johnson is that he and Ms. Jones had a recent conversation, and we don't know if that took place prior to the complaint or after the complaint, because this came in after the hearing. And in that private conversation between two individuals, he said he would run for re-election. Just a quick question. So that means she could, under Arkansas law, give money to him and neither one would be in trouble? Your Honor, the statute right now prohibits her from contributing to Mr. Johnson. But there's nothing in the record about Mr. Johnson's actions. There's nothing in the record that he solicited the money. The statute explicitly considers soliciting money as an affirmative step that he could take. There's nothing in the record that he solicited money for Ms. Jones. But if he's, she's talking about an election several years in advance, and if he's not technically a candidate, she can give him money, right? Your Honor, he could be a candidate right now. If he made a public announcement. I'm talking about what you're asserting right now, that he's not. Correct. And so because he's not, she can give him anything she wants for a future election or anything. If the statute were not in place. No, if the statute, he's not a candidate. If he's not a candidate, he can take any money. Your definition, you're saying he's not a candidate because he hasn't made a public announcement, right? Yes, Your Honor. So he can take, he could take, yes, Your Honor, he could take that money, but at that point I don't think it would be a contribution because political, as this Court's well aware, have certain rules that they have to be followed. And so if she just gave him $200 as a gift, I don't think that would, that's not a contribution subject to the same limits. She wouldn't get in trouble either. So you're suggesting there's other statutes and other requirements that would prevent that particular scenario? Because I think that Judge Kelly's making a proves too much argument, that if he's not a candidate that actually there might be not any limitations on giving the money. But you're suggesting that there are other statutes and regulations that might limit that?  But is there any, the definition of candidate doesn't require that there be a public announcement, does it? I mean, all it does, all it requires is that they solicit funds. You can do that privately, can't you? Your Honor, the statute, it says affirmative steps. And in every other area of law, affirmative steps requires action that would move the candidacy, here, move the candidacy forward. There's nothing in the record. Well, let's just take, let me, excuse me, okay. State senators in Arkansas run our four-year terms, right? Yes, Your Honor. So I'm elected to the State Senate. I may, for a lot of reasons, I may not want to publicly announce my re-election the day after I get elected for my new four-year term. But I want to start raising money. And so I go to a fundraising event. Is that, isn't that enough? You don't, haven't done anything publicly. You know, you see that all the time, particularly in the federal. You know, we've got a senator right now who's out raising millions of dollars and said I won't formally announce my candidacy until a year before the election, but I'm going to raise all the money I can. Your Honor, under Arkansas law, they can't currently, they couldn't fundraise until the two-and-a-half to two-year mark before their primary. I know, I know, that's the point. If they attended a, if they threw and attended a fundraiser for their candidacy, that would be an affirmative act. If they just attended a political party's fundraiser for general candidates, I don't believe Arkansas would consider that an affirmative act under this statute that they intended to run for re-election. To make it even more stark, too, I mean, the fundraiser's pretty stark. But suppose that, suppose that the conversation was, I know that's not precisely this case, although it's pretty close, you know, gosh, I'm going to have a really tough race in 2022. They're really lining up against me, and I'm running. There's no doubt I'm running. But for strategic reasons, I'm not going to announce because I don't want to, you know, put myself into that, you know, being targeted three years in advance. I mean, that's almost like saying, that's a pretty affirmative step, declaring your intent to run even privately and then talking about your race in 2022. And that might compel a supporter to say, well, geez, if it's a hard race, why don't I give you some money right now to help you kind of prepare for your announcement? You still don't think that's enough? Your Honor, the state of Arkansas requires an affirmative step that the candidate takes. So it would have to be – Well, he did. He said this is a really tough race. You know, I'm running, though. That's pretty affirmative. But there's no evidence, that may be, Your Honor, but there's no evidence in this case, in this record, that Mr. Johnson has done that. If I may switch to the merits of the claim very briefly before. Even if Ms. Jones has standing, the district court erred in finding that she was likely to succeed on the merits. It is undisputed that the state of Arkansas has a compelling interest in preventing the corruption of its political processes and the appearance of corruption. This statute does that in three direct ways. First, it prevents candidates from circumventing the state's constitutional contribution limits. Second, it – How does it do that, though? This – I mean, that – I hate to interrupt you because I know you have two more, but I don't want to lose this point, which is that this is a prophylaxis upon prophylaxis type thing. You already have a $2,700 limit, so why do you need to bar the two years? Because no matter what, in a four-year period before each election, Ms. Jones could only give $2,700, whether she gives it three years before or one year before. And so how does it help with circumvention? Your Honor, very briefly, she – first, Arkansas allows – the $2,700 is per election, so they could give twice, primary and general, just as an aside. Okay. Second, the way that it would work in practice is if I announced – if I was running for 2022, and I was – sorry, 2020, and I noticed that I was running low on funds, under current law, and this is exactly what Buckley talked about, I would either have to find new voters to contribute to my campaign, or the individuals who have contributed but haven't reached their maximum, I would have to ask them for more money. Without this statute in place, I could simultaneously run for re-election in 2026. And so an individual could give me the $2,700 twice for 2020, and then the $2,700 twice for 2026. So why not do something more limited? If there's four-year terms, why not say any time during a four-year term? The black – you can't give money to a 2026 race. You can only give money for the next election. That would take care of it and be much narrower. Your Honor, in – this court has held that in election law cases, the mere identification of a less burdensome alternative is not dispositive. I agree with that, but it can be probative. Yes, Your Honor. The statute just needs to be proportional and reasonable. And here the state of Arkansas, in deciding two years, chose the longest – the widest temporal band that exists in my research. And it did that because that is the shortest election period in the state of Arkansas. That's what the shortest election period officers serve for. And because this starts at the primary, that effectively gives candidates 30 to 32 months within which to raise funds or voters 30 to 32 months within which to contribute. And I realize I'm in my rebuttal time, so – Can I ask just one more question? And we'll give you some extra time if you need it. We're asking you a lot of questions. Yeah, and so McCutcheon. I know that the state argues really, really hard that McCutcheon's a plurality opinion and we shouldn't follow it because there's a lot that's not good for the state in the Supreme Court's McCutcheon opinion. Yes, Your Honor. Suppose we disagree with you on that. Suppose we – I mean, technically it's not binding, but when you have four members of the Supreme Court telling you something and it drives the result, which is what a plurality opinion is, that's pretty persuasive. And so suppose we think that we need to follow most of McCutcheon. Does the state lose? And if they don't, tell me precisely why. Your Honor, even if McCutcheon – we admit McCutcheon is at least persuasive here. And even if McCutcheon is binding, we don't believe that we lose because we think the district court misinterpreted evidence as far as McCutcheon has used it. We believe what evidence – evidence of how it was used in McCutcheon can include evidence of a reasonable fear of corruption. And in McCutcheon itself, the Supreme Court spent six pages going through different hypotheticals that the federal government had offered to justify the statute in question. If they had to have empirical evidence, the district court below asked my colleague for scientific evidence. If they had to have that kind of evidence, the Supreme Court would not have needed to go through all of these hypotheticals.  is because they were – I believe the court used divorce from reality and implausible. One of them, for example, was giving $500,000 to get your candidate an extra, I believe, $20,000. And they said nobody would do that. Here, the state has articulated three ways – three rational ways that an individual or a candidate could circumvent existing Arkansas law if the statute wasn't in place. Yeah, I apologize for not letting you get to the other two. Hopefully you can address that on a rebuttal. That's okay. Thank you so much, Your Honor. Good morning. May it please the court. Chad Peckron for the plaintiff, Peggy Jones. Your Honor, I'd like to start with the question that Judge Kelly raised to begin this argument on standing because I haven't had a chance to address it because it was a new argument that was raised in reply, which is whether Senator Johnson is or is not a candidate. For reasons I'll get to in a moment, that really doesn't matter in this analysis. But the fact is, if Senator Johnson did the very thing that the blackout period prohibits him from doing, which is accepting a contribution, he would be a candidate. And Judge Kelly and Judge Strauss, I think you hit it right on the point, where if there's a conversation where Senator Johnson tells Mrs. Jones I'm running for office, that's an affirmative step. Arkansas law doesn't say anything beyond taking an affirmative step to running for office. And when Senator Johnson told Mrs. Jones I'm running for office, that's the affirmative step. And why is that important? Because if you look at the entire statute, what that definition of candidate relates to is when you fall under things like reporting requirements and things like that. And so once Senator Johnson becomes a candidate, which he does by accepting a fund, accepting a contribution, he then becomes a candidate, he has to report that, he has to disclose that. At that point, Senator Johnson's clearly a candidate. If he did the one thing that they're prohibited from doing from the blackout period, which is soliciting and accepting a contribution, more than two years before an election. I think on this record, Mrs. Jones' standing is very clear. There's a few simple facts that establish that. Mrs. Jones wants to contribute funds to Senator Mark Johnson, among others, in the 2022 election cycle. She contributed to him in 2018. Senator Johnson has told her that she's running again in 2022. And the blackout period is the only reason that that contribution has not been given yet, because it is prohibited by law. Under this court's case law, including cases like Arkansas Right to Life versus Butler and St. Paul Chamber of Commerce versus Gairdner, those facts are enough to create standing. This case is not hypothetical. It's not speculative. There's a concrete dispute with a set of facts that clearly demonstrate that That is all that is required for her to have standing to sue. Now, as you all have recognized, the state's kind of changed its position on standing a few times in this case. Originally, the state said Mrs. Jones had to plead a specific name of a candidate that she wanted to support. First of all, that's not necessary for reasons I'll get to in a minute, but you have to look at the context of the case where we are. We're not at a motion to dismiss stage. They did not move to dismiss for lack of standing. We're at a preliminary injunction. The district court properly considered the record before it, which included an affidavit from Mrs. Jones identifying Senator Johnson, which was consistent with the allegations in her complaint, which was that she wanted to contribute to candidates, including at least one who lived in Pulaski County like Senator Johnson does, but was prohibited from doing so by the blackout period. By identifying Senator Johnson, Mrs. Jones went much further. This court is required in Butler and in state hall chamber that was required of standing. In Butler, which invalidated three other provisions of this very same initiated act that we're here today about, all that the plaintiff said was, we want to contribute to candidates for constitutional office in Arkansas. That was all that was required. The court held that those were specific facts that created a specific intent  That was all that was required. Gartner goes even further. In Gartner, the statute issue prohibited corporate contributions to candidates for federal office. That's a Minnesota state law. The St. Paul Chamber of Commerce said, we want to contribute to candidates for federal office. That was all they said. And the court held that was enough. And to understand quite how far that went, you need to look at Judge By's concurring slash dissenting opinion, where he agreed that they had standing, but pointed out that there were no candidates identified in the complaint. And in fact, no candidates had even announced for federal office at that time. Exactly the factual scenario here, if not less far. More than enough for us to have standing. The state then flips its argument in its reply brief here and says, well, we don't really know if this person's a candidate. You've identified somebody, but we don't know enough about them. Again, that goes back to what we just talked about. He's done more than enough to take that affirmative step required by Arkansas law to become a candidate. The state also criticized Mrs. Jones in her brief for offering no evidence that Senator Johnson would accept a contribution. Very simple reason for that. If he did that, he'd be violating state law. He'd be violating the blackout period. It goes back to the argument that they made in their opening brief, which I think they've wisely abandoned at this point. They certainly haven't raised it today, which is that in order to have standing to challenge the blackout period, she'd first have to violate that. They made that argument throughout the case until their reply brief. And as you all know, that's just not what the First Amendment has said. This court has held repeatedly that you don't have to violate a statute in order to have standing. But by requiring plaintiffs to put forth evidence that Senator Johnson would violate state law in order to have standing, they're essentially arguing the same thing. I'd close on the standing point by directing this court to the 10th Circuit's opinion in Walker, which we cited in our brief. The court there recognized that it makes no sense to require us to say that this statute chills, but then criticize us for saying, I'm not going to tell you exactly what we're going to do if this conduct wasn't illegal. Here, the state's basically saying, we've completely chilled the market for political contributions more than two years before an election, but you don't have standing to challenge that because you can't identify a candidate who would take funds more than two years before an election. Do you have a problem, though, because you didn't identify the candidate from the beginning? And the reason why I say that is because usually you have to have standing at the outset. So if Ms. Jones didn't have an intent to contribute at the time the complaint was filed to a specific candidate, is that a problem? Number one, not at all, Your Honor, because that gets us right back into the St. Paul v. Gartner case. She wanted to contribute to a category of candidates that were prohibited, that is, candidates running in the 2022 election, but can't do so because of the blackout period. Gartner specifically says, Gartner even goes further than our case and says, there are no candidates, but they want to engage in prohibited conduct, and that's enough. So no, I don't think so. And in any event, reading our complaint fairly, there were obviously candidates that she had in mind. She even identified where one of them lived, Pulaski County, which is where Senator Johnson lives. So I think we've gone more than far enough in that part. Now I'd like to turn to the merits. State does not dispute that Mrs. Jones' contributions implicate core First Amendment activity. As this court recognized in the Free and Fair case, any restrictions on contributions are subject to exacting scrutiny. That requires that the challenge law advances sufficiently important state interests and employee means closely drawn to avoid unnecessary abridgment of First Amendment freedoms. Until the reply brief in this appeal, the state's main position throughout this case was to cite a generalized interest in preventing corruption. But the Supreme Court has made clear, most recently McCutcheon, and as this court recognized in Free and Fair, that the prevention of quid pro quo corruption is the only valid interest to justify a First Amendment restriction on campaign contributions. Here, Arkansas already has a $2,700 maximum contribution limit to address that concern. And Your Honor, you already mentioned the prophylaxis upon prophylaxis restriction, which is exactly what we have here. We have a $2,700 contribution limit, which the state of Arkansas has decided that's the maximum amount that we believe can be contributed without creating a risk of quid pro quo corruption. But now not only are we going to tell you you can't contribute more than $2,700, we're also going to tell you you can't contribute more than two years before an election. That additional restriction requires evidence that it is also necessary to prevent a substantial risk of quid pro quo corruption. Why isn't the desire to prevent sort of double dipping for different campaigns, why isn't that enough to push this ahead? Your Honor, that anti-circumvention rationale is the same one that was put forward by this court, or was put forward by the state of Missouri in the Free and Fair case, where they're saying we need a contribution limit to prevent one PAC from donating to another PAC in violation to circumvent these limits. And the court there found three fundamental problems that apply here with equal force. First, in neither case is there any evidence in the record that that sort of circumvention ever has occurred. The state here cites the D.C. Circuit's opinion in Wagner for the proposition that, well, that just means the statute's working. That's why we don't have any evidence. But in Wagner, which involved political contributions made by federal contractors, the court relied upon tons of evidence of misconduct involving that very issue, contributions by federal contractors before they were banned. Here, on the other hand, the blackout period wasn't put into place until 1996, and there was no evidence that prior to its enactment people were making these hypothetical five-year-in-advance contributions to an election that's not even next on the docket for a particular candidate. So is it your position there has to be actual evidence that it has happened? Can there be sufficient evidence that there is a concern about it? To what degree does the state have a burden of providing detailed evidence, in your view? Well, Your Honor, first of all, the state has the burden of proving the constitutionality here. And Shrink Missouri makes clear that mere hypotheticals cannot be enough standing alone based on conjecture to satisfy that burden. And here, that's all they've advanced. You heard the argument that the state made here, which is basically somebody might run in 2022. In 2021, they're running low on funds, so they announce they're going to run in 2026. First of all, as I believe the court's already recognized, you could very easily prevent that by enacting a law that says you can only raise funds for the next election that you're running for. That would be much more narrowly tailored. It would limit the burden on First Amendment rights. And in any event, Arkansas law restricts people from spending money for the next election that they're running for. For example, if you raise money for a general election and a primary election, which as the state pointed out, they're separate. You can raise $2,700 for the primary and $2,700 for the general. You can't use general election funds to run in the primary. You have to keep those separate. And so in their hypothetical, let's use their hypothetical. Say I'm getting to the end of a very difficult primary and I'm running out of money. I might get people to donate to my general election who've already maxed out and use that money. That's prohibited. And there's no evidence that that has ever occurred, which is a far more rational and plausible factual scenario than this idea that you might announce that you're running for a different election and raise money for that, which you'd have to disclose in any event. So that's another reason to believe this isn't ever going to happen. I wouldn't want to be the candidate who announces in the middle of the race for state Senate, oh, and by the way, five years from now, I'm going to run for governor. So give me money for that while you're at it. It has to be reasonable. And this concern that they're citing on circumvention just isn't reasonable. And in any event, the state's trying to say, well, we don't really have to put forward any evidence because this is really just another version of a maximum limit. But what they've done is say during these periods where we're not going to allow you to speak, the maximum limit is zero. It's a complete prohibition on campaign speech. And McCutcheon makes clear that when there's a clear prohibition, a complete prohibition on any sort of contribution, there's a very high evidentiary burden. And I'd like to direct this court to the Fifth Circuit's opinion in Zimmerman from last year. I think the Fifth Circuit really addresses this issue carefully. And the court recognizes that this is a quintessential prophylactic on prophylactic restriction. You've already said whatever amount of contribution or whatever amount of corruption you can supposedly buy for $2,700 if you do it less than two years before an election, somehow you can buy more if you can give that same amount more than two years before an election. That applies in the face of logic. The state of Arkansas has decided that $2,700 is the maximum that you can contribute without creating any sort of a substantial risk of corruption. To say that when you give that somehow creates more corruption you need to have some sort of reasonable basis based on evidence upon which to do that. Here, at the preliminary injunction hearing, the district court asked a very simple question of counsel. He said, when you come up here at a later point in this case, what evidence are you going to give me that this blackout period has anything to do with preventing quid pro quo corruption? And the state said, quite truthfully, I don't know of any. I've talked to people. I've looked into it. I'm not aware of any. And for that reason, the district court was more than justified in this case in finding that Mrs. Jones has a likelihood of success on the merits sufficient to enter a preliminary injunction. That was well within his discretion, and we believe that it should be affirmed. And I would also like to mention... Can I ask one question before you close? Is there any evidence in the record that this was enacted as an incumbent protection provision? In other words, sometimes, if you're going to take on an incumbent, you want to get started earlier rather than later. Is that at all in the case? Your Honor, there's no evidence of that. I think you're certainly correct that it could function that way. Because this was an initiated act as opposed to a legislative act, we don't have the sort of legislative history that we might otherwise look to to answer that question. The only other thing I'll mention very quickly is we asked the court to affirm the preliminary injunction. I don't think it was before this court at the motions panel, but the district court has stayed the preliminary injunction in our favor pending this appeal. I know this court will address it as expeditiously as possible, but I did want to bring that to the court's attention. Can I ask one last question? What do you view as the scope of the injunction here? I know it's not being challenged, but exactly what did the district court order? All we have is one line, and I don't know who's being enjoined, and I don't know what they're enjoined from doing. The district court has enjoined enforcement of the blackout period by the defendants. Statewide, against certain people? I mean, I just don't know. Against the local prosecutor at issue and then the members of the Arkansas Ethics Commission who would also have authority. Thank you. Thank you. Your Honor, before I begin, I think you said that you would give me more time. Yes, how much would you like? I planned four minutes for rebuttal. We'll give you four minutes. Thank you so much. Thank you, Jackie. Very quickly, before I... I would like to spend most of this addressing the merits of the claim, but very quickly, the standing argument about the candidate is not a new argument. If you looked at the hearing transcript, the very first thing out of my colleague's mouth who handled this case was that there was no candidate. And likewise, about the part that we didn't articulate specific corruption rationales, if you look at the hearing transcript, when we began talking about our compelling interest in preventing corruption, the judge below immediately agreed with us and so there was no need to exhaustively explain all of these points until we have done that now in our briefing. Very briefly, the other two ways that the statute curbs corruption are it prevents circumvention of the state's post-election contribution ban and it prevents the appearance of corruption, which the Supreme Court has held is more important... I'm sorry, is almost as important as preventing corruption itself, because the appearance of corruption can undermine the integrity of the system. Given the state's compelling interest, the only thing the court must decide is if the statute furthers that interest while unnecessarily infringing on Ms. Jones' First Amendment rights. If it is, then it is closely drawn and it must be upheld, even if it is a significant interference on her rights. Contribution limits, like the one here, are marginal restrictions and are subject to a less rigorous standard of review. They are only unconstitutional if they prevent a candidate from amassing the resources necessary for effective advocacy or an individual from engaging in political association so that it renders that ineffective or their contribution pointless. There is nothing in the record about either of those being true. If the statute allows for effective advocacy and for association, the court must show deference to the body that created the law. As I said earlier, the statute here gives 30 to 32 months for an individual to solicit or make contributions. During the time that the blackout is engaged, Ms. Bates must show the rights within which she can associate. Most importantly, she can engage in unlimited independent expenditures on behalf of any individual she chooses. Can we also volunteer? You mentioned the appearance of corruption earlier, and I want to give you a chance to kind of make the thrust of your argument. What's your argument, though? A lot of the corruption arguments opposing counsel stated are things that we rejected in the free and fair case last year, the PAC case. And I understand this isn't a PAC case, but do you have a response to sort of your opponent's citation to that case? Your Honor, we believe that the appearance of corruption is enough to justify the statute. And here, if you look at the history of Arkansas legislators in the last five years, we have had numerous individuals indicted for creating fake retainer schemes or for receiving kickbacks, which is exactly the type of pro quo corruption the government is allowed to target. And so we believe we have a credible fear here. We're going to have one of those tomorrow. Well, this case really comes down to legislative difference. As I said earlier, the mere identification of a less burdensome alternative is not dispositive in election cases. This Court recognized in Libertarian Party of North Dakota v. Yeager that the need for fair and orderly elections requires State to enact restrictions on the election process, even though those restrictions may be In that same vein, the Supreme Court has stated that narrowly tailored does not mean perfectly tailored. Courts do not have a scalpel within which to fine-tune a statute. This Court said in McLean v. Meyer, once a primary date has been established, it would be impossible to defend as either compelled or less drastic. A litigate could always point to a day slightly later that would not significantly alter the State's interest until such point the State no longer had an interest to protect. Your Honor, I realize I rebelled. May I briefly conclude? Yes, you may. In McLean, when evaluating the constitutionality of the date, this Court said the statute only needed to be reasonable, and that matches up with all federal election law. The statute has to be reasonable and it has to be proportional. And Arkansas Code Annotated 76203E is both of those things. The lower court did exactly what the Supreme Court has cautioned against and asked the State why 25 months was more corrupt than 24. In so doing, it abused its discretion and waded into the waters of legislative domain. For that reason, we ask that you defer to the State of Arkansas for the 24-month blackout period and vacate the preliminary injunction. Thank you so much. Thank you. Thank you both to both counsel. We appreciate your argument and your briefing, and we'll take the matter under consideration. Does that conclude the docket for the morning? It does, Your Honor. Court will be in recess until tomorrow morning at 8.30.